UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, | ) ) ) | |
| *Plaintiff*, | ) ) | No. 1:17-cv-00712-JMS-MPB |
| *vs.* | ) ) | |
| KIZZANG LLC and ROBERT ALEXANDER, | ) ) | |
| *Defendants*. | ) ) | |

## ORDER

In March 2017, Plaintiff National Collegiate Athletic Association (the "NCAA") initiated this lawsuit against Defendants Kizzang LLC ("Kizzang") and Robert Alexander, the founder and owner of Kizzang, for trademark infringement, trademark dilution, and unfair competition related to Defendants' alleged use of the marks "FINAL 3" and "APRIL MADNESS." On November 7, 2017, the Court denied Defendants' Motion to Dismiss, and granted the NCAA's Request for Entry of Default based on Defendants' failure to timely answer or otherwise plead to the Complaint. [Filing No. 73.] The NCAA has now filed a Motion for Default Judgment, [Filing No. 76], and a Motion for Permanent Injunction, [Filing No. 78], both of which are now ripe for the Court's decision.

## I.
### BACKGROUND[1]

On March 8, 2017, the NCAA filed its Complaint in which it alleges that Defendants "are in the business of marketing and providing nationwide Internet-based promotions that award prizes

---

[1] The background facts are taken largely from the Court's November 7, 2017 Order on Defendants' Motion to Dismiss and the NCAA's Request for Entry of Default. [Filing No. 73.] The November 7, 2017 Order, however, provides additional details regarding the history of this case.

for predicting the results of sporting events, including the results of college basketball games played by and between NCAA member schools, and in particular games played during the NCAA's Division I Men's Basketball Championship." [Filing No. 1 at 5.] It alleges that Defendants used the marks FINAL 3 and APRIL MADNESS in connection with their Final Four-based contests and "continue offering goods and services using the FINAL 3 and APRIL MADNESS marks via webpages and mobile-telephone applications…." [Filing No. 1 at 6-7.] The NCAA alleges that Kizzang has applied for federal trademark registration for FINAL 3 and APRIL MADNESS with the United States Patent and Trademark Office ("USPTO"). [Filing No. 1 at 7.]

The NCAA sets forth claims for: (1) trademark infringement under 15 U.S.C. § 1114; (2) trademark infringement under 15 U.S.C. § 1125(a); (3) trademark dilution under 15 U.S.C. § 1125; and (4) unfair competition. [Filing No. 1 at 8-11.] It requests that the Court enter judgment in its favor; order that the USPTO deny Kizzang's application to register the marks Final 3 and April Madness; and permanently enjoin Defendants from using the NCAA's Final Four and March Madness marks "and any colorable imitation or simulation of [them]," doing anything likely to induce the belief that Kizzang's products or services are legitimately connected with or sponsored or approved by the NCAA, and doing anything that is likely to dilute the distinctiveness of the NCAA's FINAL FOUR and MARCH MADNESS marks or that is likely to "tarnish the goodwill associated with those marks." [Filing No. 1 at 11.] The NCAA also requests that the Court order Defendants to recall all products, services, advertising, and promotional materials bearing the NCAA marks and any imitations of them, including FINAL 3 and APRIL MADNESS. [Filing No. 1 at 12.] Additionally, it seeks actual damages, all profits derived by Defendants from the acts complained of, the greater of three times the damages the NCAA has suffered as a result of the acts complained of or three times Defendants' profits, exemplary damages, and attorneys' fees and

costs, and requests that Defendants be required to file with the Court a report in writing under oath setting forth the manner and form in which Defendants have complied with the terms of any injunction entered by the Court. [Filing No. 1 at 12.]

The NCAA filed a Motion for Preliminary Injunction on March 9, 2017, requesting that the Court preliminarily enjoin Defendants from the acts set forth in the request for relief contained in the Complaint. [Filing No. 5.] Seven days later, the Court entered a Stipulated Order, submitted on a motion by all parties, ordering that: (1) "[n]either Kizzang or Alexander, nor any of their officers, agents, servants, employees or attorneys, or anyone acting in concert with any of them, will use the marks FINAL 3 (or THREE) or APRIL MADNESS or any similar marks, in connection with any basketball themed contest, promotion or service in 2017"; (2) the NCAA's Motion for Preliminary Injunction is withdrawn without prejudice; and (3) "Defendants, having been served with the Complaint, shall answer by June 15, 2017." [Filing No. 20.] The June 15, 2017 answer deadline was later extended to July 15, 2017. [Filing No. 28.]

The July 15, 2017 deadline came and went without an answer or pleading from Defendants, and on July 21, 2017, the NCAA filed its Request for Entry of Default. [Filing No. 30.] Defendants responded to the Request for Entry of Default on August 10, 2017, [Filing No. 36], and filed a Motion to Dismiss or, in the alternative, to transfer the case to the United States District Court for the District of Nevada on August 31, 2017 – more than six weeks after the July 15, 2017 responsive pleading deadline, [Filing No. 50; Filing No. 51].

On November 7, 2017, the Court denied Defendants' Motion to Dismiss as to Defendants' personal jurisdiction argument, denied as moot the remainder of the Motion to Dismiss, and granted the NCAA's Request for Entry of Default. [Filing No. 73.] Shortly thereafter, the NCAA

filed a Motion for Default Judgment, [Filing No. 76], and a Motion for Permanent Injunction, [Filing No. 78], which are discussed below.[2]

## II.
### STANDARD OF REVIEW

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for a party seeking default judgment. *McCarthy v. Fuller*, 2009 WL 3617740, *1 (S.D. Ind. 2009); *see also Lowe v. McGraw-Hill Companies, Inc.*, 361 F.3d 335, 339 (7th Cir. 2004) ("The Federal Rules of Civil Procedure make a clear distinction between the entry of default and the entry of a default judgment"). First, the plaintiff must obtain an entry of default from the Clerk. Fed. R. Civ. P. 55(a). Second, after obtaining that entry, the plaintiff may seek an entry of default judgment. Fed. R. Civ. P. 55(b).

"A default judgment establishes, as a matter of law, that a defendant is liable to the plaintiff for each cause of action in the complaint." *Coach, Inc. v. Tom's Treasure Chest*, 2011 WL 4399355, *2 (N.D. Ind. 2011) (finding assertions of Complaint "taken as true" in determining willful infringement in connection with selling knockoff handbags containing Coach marks) (citing *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1404 (7th Cir. 1993)). "When a court determines that a defendant is in default, all well-pleaded allegations in the complaint will be taken as true." *Coach, Inc.*, 2011 WL 4399355 at *2 (citing *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994)).

---

[2] The Motion for Permanent Injunction, which the Court instructed the NCAA to file, [*see* Filing No. 73 at 15], is a subset of the Motion for Default Judgment, as it addresses one of the several types of relief the NCAA seeks in the Motion for Default Judgment. Accordingly, the Court addresses the Motion for Permanent Injunction in its discussion of the Motion for Default Judgment.

# III.
## DISCUSSION

In its Motion for Default Judgment, the NCAA argues that it is entitled to default judgment on liability because, as a result of the Clerk's entry of default, all factual allegations of the complaint are taken as true. [Filing No. 77 at 4.] It sets forth the allegations in the Complaint that it contends support its claims. [Filing No. 77 at 4-15.]

In their response, Defendants reiterate many of the same arguments they made in opposition to the NCAA's Request for Entry of Default. [Filing No. 83.] Specifically, they argue that good cause existed for the default, that they acted quickly to correct the default, and that they have asserted a meritorious defense to the Complaint. [Filing No. 83 at 4-12.] Defendants also argue that they have "demonstrated their ongoing commitment to defending this case," [Filing No. 83 at 12-13], and that the NCAA is not entitled to a finding that this is an exceptional case such that it would be entitled to an award of attorneys' fees. [Filing No. 83 at 12-14.]

In reply, the NCAA argues that "Defendants seek to reargue, without justification or leave, the settled issue of whether they should be held in default," and "[t]he Court should give those arguments no consideration." [Filing No. 85 at 2.] It again asserts that it has shown that the factual allegations in the Complaint, which are deemed true for purposes of establishing liability, state claims for relief under the Lanham Act and Indiana common law. [Filing No. 85 at 2.]

At the outset, the Court notes that the issue of whether Defendants are liable is separate and apart from whether the NCAA is entitled to certain relief, such as a permanent injunction. The Court first addresses whether Defendants are liable for trademark infringement, trademark dilution, and unfair competition.

### A. Liability

In connection with liability, Defendants reassert the arguments they set forth in response to the NCAA's Request for Entry of Default. [*See* Filing No. 83 at 4-12.] The Court considered those arguments thoroughly in connection with the NCAA's Request for Entry of Default, [Filing No. 73], and will not do so again here. Because Defendants did not show good cause for default,[3] that they acted timely to remedy default,[4] or that they have meritorious defenses – as discussed in the Court's November 7, 2017 Order – Clerk's entry of default was appropriate.

"The basic effect of an entry of default…is that '[u]pon default, the well-pleaded allegations of a complaint relating to liability are taken as true.' The defaulting party cannot contest the fact of his liability unless the entry of default is vacated under Rule 55(c)." *VLM Food Trading Intern., Inc. v. Illinois Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (citations omitted); 10 James W.M. Moore et al., MOORE'S FEDERAL PRACTICE § 55.32[1][a] (3d ed. 2013) ("The effect of an entry of default, if not set aside, is to establish the liability of the defaulting party as a basis for default judgment. After defaulting, a party has no right to dispute the issue of liability").

---

[3] Mr. Alexander presents additional information regarding his health during the time period from April 2017 to July 2017, including that he broke several ribs after falling down a flight of stairs, developed a flesh-eating disease in his leg, developed pneumonia, and re-fractured his ribs. [Filing No. 83; Filing No. 83-1.] While the Court is sympathetic to Mr. Alexander's health issues, it notes that Mr. Alexander did not provide this information in connection with the NCAA's Request for Entry of Default. Further, Mr. Alexander does not explain how, despite his health issues, Kizzang was still able to participate in other legal proceedings during that timeframe. [*See* Filing No. 73 at 10.]

[4] Defendants argue that they indicated in Court filings that they would respond to the Complaint by August 31, 2017, and that "neither the Court nor opposing counsel indicated this would be a problem or prejudicial, and no one raised an objection to the anticipated course of action." [Filing No. 83 at 8.] Once a deadline has been set – here, the July 15, 2017 deadline for answering or otherwise pleading to the Complaint – it is not the Court's job to further monitor the situation to make sure that the deadline is complied with. Further, it is axiomatic that deadlines remain in effect until extended or vacated by Court order. Neither occurred here.

1.  *Trademark Infringement Under 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a), and Common Law Unfair Competition*

"To prevail on [a § 1114 and § 1125 claim], a plaintiff must establish that (1) its mark is protectable and (2) the defendant's use of the mark is likely to cause confusion among consumers." *CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 673-74 (7th Cir. 2001); *see also AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008) (applying same standard to trademark infringement and common law unfair competition claims). In order to determine whether a likelihood of confusion exists, courts consider "(1) 'the similarity between the marks in appearance and suggestion'; (2) the similarity between the parties' products; '(3) the area and manner of concurrent use'; (4) the level of care a consumer would be expected to exercise in discerning the products; (5) the strength of the plaintiff's trademark; (6) actual confusion; and (7) the defendant's intent to pass his product off as the product of another." *Allison Transmission, Inc. v. Fleetpride, Inc.*, 2017 WL 1282994, *3 (S.D. Ind. 2017) (quoting *Sorenson v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015)). "[T]he test of liability for infringement is whether the infringer's 'use is likely to cause confusion, or to cause mistake, or to deceive....'" *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1330 (7th Cir. 1977) (quoting 15 U.S.C. § 1114(1)).

The NCAA has alleged that it has the protectable trademarks "FINAL FOUR" and "MARCH MADNESS," and that the tournaments the NCAA puts on bearing those names "are among the nation's premiere sporting events." [Filing No. 1 at 2.] Further, the NCAA alleges that Defendants have branded Kizzang's NCAA-based services using the marks FINAL 3 and APRIL MADNESS and that Defendants had planned to use the mark FINAL 3 for a 2017 NCAA Division I Men's Basketball Championship FINAL FOUR-based contest. [Filing No. 1 at 7.] The NCAA also alleges that Kizzang has adopted the mark APRIL MADNESS for the same services as FINAL 3, including the Division I Men's Basketball Championship. [Filing No. 1 at 7.] The NCAA

alleges that Defendants' use of the marks FINAL 3 and APRIL MADNESS are "likely to cause confusion or mistake, or to deceive as to Defendants' affiliation, connection, or associate with the NCAA, or as to the origin, sponsorship, or approval of Defendants' services." [Filing No. 1 at 8.]

The Court finds that the NCAA has adequately alleged violations of § 1114 and § 1125 and common law unfair competition, and that Defendants have admitted the allegations in connection with those claims through default. The marks FINAL 3 and APRIL MADNESS are obviously similar to FINAL FOUR and MARCH MADNESS, and the NCAA has alleged that Defendants offer similar contests through the use of the marks FINAL 3 and APRIL MADNESS as the NCAA offers through FINAL FOUR and MARCH MADNESS. The confusion that could result from Defendants' use of the marks FINAL 3 and APRIL MADNESS is also obvious due to their significant similarity to the NCAA's marks. Further, the NCAA has alleged that Defendants have used the marks FINAL 3 and APRIL MADNESS "with the intention of exploiting the goodwill associated with the NCAA Marks."[5] [Filing No. 1 at 8.] The similarity of the marks also leads to the conclusion that Defendants intended to pass their products off as the NCAA's. Accordingly, the NCAA has established liability on its § 1114 and § 1125 Lanham Act claims and its common law unfair competition claim through its allegations, which Defendants have admitted by virtue of the default.

---

[5] Defendants argue that the NCAA's allegations with respect to their intentions are inadequate because they are made "upon information and belief." [*See, e.g.*, Filing No. 84 at 4-5.] But the only case Defendants cite does not stand for the proposition they set forth. *See Bowles v. Montgomery Ward & Co.*, 143 F.2d 38, 42 (7th Cir. 1944) (stating that an application for preliminary injunction cannot be based on information and belief, but must be based on facts; case did not involve a default judgment). Defendants have not provided any case law standing for the proposition that they are not deemed to have admitted allegations made upon information and belief in the default context.

### 2. *Trademark Dilution Under 15 U.S.C. § 1125(c)*

15 U.S.C. § 1125(c) provides that:

> [T]he owner of a famous mark that is distinctive inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, or competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1). In order to show a violation of § 1125(c), the NCAA must prove that: (1) the FINAL FOUR and MARCH MADNESS marks are famous; (2) Defendants adopted their FINAL 3 and APRIL MADNESS marks after the NCAA marks became famous; (3) use of the FINAL 3 and APRIL MADNESS marks causes dilution of the FINAL FOUR and MARCH MADNESS marks; and (4) Defendants' use of the FINAL 3 and APRIL MADNESS marks is commercial and in commerce. *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 466 (7th Cir. 2000). The Seventh Circuit Court of Appeals has recognized two types of trademark dilution: tarnishing and blurring. *Id.* "Dilution by tarnishing occurs when a junior mark's similarity to a famous mark causes consumers mistakenly to associate the famous mark with the defendant's inferior or offensive product. Dilution by blurring…occurs when consumers see the plaintiff's mark used on a plethora of different goods and services,…raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." *Id.* (citations and quotations omitted).

Here, the NCAA has adequately alleged trademark dilution both by tarnishing and blurring. The NCAA alleges that its marks have been famous for a long period of time, that its marks were famous before Defendants began using the FINAL 3 and APRIL MADNESS marks, that Defendants' use of the FINAL 3 and APRIL MADNESS marks connects the NCAA's marks to Defendants (tarnishing the NCAA's marks) and expands the goods and services associated with

9

the NCAA's marks (blurring the NCAA's marks), and that Defendants used the marks in commerce. [Filing No. 1 at 2; Filing No. 1 at 7; Filing No. 1 at 9-10.] Defendants have admitted these allegations by virtue of their default, so default judgment on the trademark dilution claim is warranted.

In sum, the Court has already found that entry of default is appropriate in this case because there was not good cause for Defendants' default, Defendants did not act quickly to correct the default, and Defendants have not asserted a meritorious defense to the Complaint. The Court further finds that the NCAA has set forth adequate allegations – deemed admitted by Defendants' default – to support their liability for trademark infringement under § 1114 and 1125, trademark dilution under § 1125(c), and common law unfair competition.

## B. Requested Relief

Having found that the NCAA has established that Defendants are liable for trademark infringement and trademark dilution under the Lanham Act, and for unfair competition, the Court will now consider whether the NCAA has demonstrated entitlement to the relief sought by virtue of the default.

"Once the default is established, and thus liability, the plaintiff still must establish his entitlement to the relief he seeks." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). "'Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Id.* (quoting *Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)); *see also e360Insight v. The Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007) ("[A]lthough a default judgment establishes liability, it does not answer whether any particular remedy is appropriate").

The NCAA seeks the following relief: (1) a judgment that Defendants have violated the Lanham Act, § 1114 and 1125, and Indiana common law, and that such violations were willful, intentional, and deliberate, making this an exceptional case under 15 U.S.C. § 1117; (2) a permanent injunction, enjoining Defendants from: (a) using the FINAL FOUR or MARCH MADNESS marks and any colorable imitation or simulation of them including FINAL 3, FINAL THREE, or APRIL MADNESS in connection with entertainment services such as online sweepstakes or contests; (b) doing anything likely to induce the belief that Defendants' products or services are in any way legitimately connected with, or sponsored or approved by, the NCAA; and (c) doing anything that is likely to dilute the distinctiveness of the NCAA's FINAL FOUR or MARCH MADNESS marks or that is likely to tarnish the goodwill associated with those marks, including the use of FINAL 3, FINAL THREE, or APRIL MADNESS; (3) an order requiring Defendants to: (a) immediately recall from all distribution channels all products, services, advertising, and promotional materials bearing the NCAA Marks and any colorable imitations of them, including FINAL 3 and APRIL MADNESS; and (b) file with the Court and serve on the NCAA a report in writing under oath within 30 days of the entry of judgment setting forth in detail the manner and form in which Defendants have complied with the terms of any injunction entered by the Court, in accordance with 15 U.S.C. § 1116; and (4) recovery of attorneys' fees, subject to a bill of costs and a motion for attorneys' fees.[6] [Filing No. 77 at 21-23.] The Court will consider each element of relief in turn.

---

[6] Although in its Complaint the NCAA seeks an order that the USPTO deny Kizzang's applications to register FINAL 3 and APRIL MADNESS, payment to the NCAA of its actual damages sustained as a result of Defendants' wrongful conduct, and payment to the NCAA of profits derived by Defendants from the complained of acts (including treble damages), the NCAA does not request these elements of relief in its Motion for Default Judgment. [*Cf.* Filing No. 1 at 11-12 and Filing No. 77 at 22-23.]

*1. Judgment in Favor of the NCAA*

The NCAA first asks for a judgment that Defendants violated the Lanham Act through trademark infringement and trademark dilution, and engaged in unfair competition. As discussed above, the Court has found that the NCAA has set forth adequate allegations to support their claims, and that Defendants have admitted those allegations through the default. Accordingly, they are entitled to a judgment on those claims.

*2. Permanent Injunction*

In order to obtain a permanent injunction, a plaintiff must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "[I]t is not uncommon for courts to issue injunctions as part of default judgments." *Virgin Records America, Inc. v. Johnson*, 441 F.Supp.2d 963, 965 (N.D. Ind. 2006) (citing *Johnson v. Kakvand*, 192 F.3d 656 (7th Cir. 1999)). Fed. R. Civ. 65(d) requires that an order granting an injunction must include the reasons why it issued, state the specific terms, and "describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required." "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P.

54(c).[7]

        a.  <u>Irreparable Harm</u>

The NCAA argues that irreparable harm is generally presumed in trademark infringement cases and, even if it is not presumed, it exists here because the NCAA's goodwill has been damaged by Defendants' actions. [Filing No. 77 at 16-18.]

Defendants respond that the NCAA relies upon general allegations, and that it has not alleged lost revenue, lower attendance, complaints from third-party licensees or from anyone, or that its losses would be "impossible to monetize or that they are so speculative to be deemed irreparable." [Filing No. 84 at 6-7.] Defendants then assert that the NCAA has not set forth allegations sufficient to support their claims. [Filing No. 84 at 7-17.]

In reply, the NCAA reiterates its arguments and contends that it need not show business loss as long as it has shown harm to its goodwill and reputation. [Filing No. 86 at 4-5.]

Defendants' only real response to the NCAA's arguments regarding irreparable injury is that the NCAA has not set forth adequate allegations to support its claims. But the Court has already considered Defendants' arguments in connection with the adequacy of the NCAA's allegations above, and will not do so again. Defendants do not dispute that irreparable injury is presumed in trademark infringement cases. *See Monster Energy Company v. Zheng Peng*, 2017 WL 4772769, *6 (N.D. Ill. 2017) (citing *Eli Lilly & Co.*, 233 F.3d at 469; *Atari, Inc. v. North*

---

[7] Defendants argue in a footnote that the Court has not made a finding that it can exercise personal jurisdiction over Defendants, but "has simply overruled Defendants' argument that the court has no jurisdiction, reasoning that Defendants waived the argument." [Filing No. 84 at 5.] While it is true that a court must have personal jurisdiction over a defendant before it can issue injunctive relief, *e360 Insight*, 500 F.3d at 598, the Court's finding that Defendants have waived the argument that the Court lacks personal jurisdiction constitutes a finding that the Court has personal jurisdiction over Defendants since personal jurisdiction is waivable, *ISI Intern., Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001).

*American Philips Consumer Electronics Corp.*, 672 F.2d 607, 620 (7th Cir. 1982), *cert denied*, 459 U.S. 880 (1982)).  Additionally, the NCAA alleges – and Defendants have admitted by virtue of the default – that its goodwill has been damaged by Defendants' infringing actions.  [*See* Filing No. 1 at 8 (alleging that Defendants have acted "with the intention of exploiting the goodwill associated with the NCAA Marks").]  The Court finds that the NCAA has shown irreparable harm in connection with Defendants' actions.[8]

b.  <u>Inadequate Remedy at Law</u>

The NCAA argues that there is not an adequate remedy at law to compensate it for Defendants' actions because "the harm to the NCAA's goodwill from being unlawfully associated with Defendants' online contests cannot be adequately measured or compensated by monetary damages…."  [Filing No. 79 at 6.]

In response, Defendants argue that an inadequate remedy at law is no longer presumed in trademark cases based on a 2006 United States Supreme Court case related to patents.  [Filing No. 84 at 18-19.]  Defendants assert that the NCAA cannot rely on allegations made upon information and belief.  [Filing No. 84 at 20.]  They also contend that when "FINAL 3" and "APRIL MADNESS" are searched on Google, none of the results relate to the NCAA.  [Filing No. 84 at 20-21.]

In reply, the NCAA argues that the harm to its goodwill by being unlawfully associated with Defendants' online contests cannot be measured or compensated by monetary damages, so

---

[8] The Court rejects Defendants' argument that the NCAA delayed in seeking a preliminary injunction, and that this indicates that the NCAA would not face irreparable harm absent an injunction.  Delay is not the only consideration in the irreparable harm analysis, and this case involves the somewhat unique situation where the harm is at its greatest at a particular time of year, surrounding the NCAA Division I Men's basketball tournament.  The Court also notes that the Stipulation maintained the status quo for nearly a year of this litigation.

constitutes irreparable harm. [Filing No. 86 at 5-6.] It also asserts that Defendants' argument related to Google searches is "bizarre," and that trademarks need not be identical to be infringing. [Filing No. 86 at 6.]

As discussed above, the Court finds that there is a substantial likelihood of confusion regarding the marks at issue. As the Seventh Circuit has noted, when there is a likelihood of confusion, "irreparable harm is especially likely in a trademark case because of the difficulty of quantifying the likely effect on a brand of a nontrivial period of consumer confusion (and the interval between the filing of a trademark infringement complaint and final judgment is sure not to be trivial)." *Kraft Foods Group Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 741 (7th Cir. 2013). Because of the likelihood of confusion between the marks, and the difficulty of quantifying concrete harm in a trademark case, the Court finds the NCAA's allegations – admitted by Defendants by virtue of the default – adequate to show irreparable harm.

### c. Balance of Hardships

The NCAA argues that granting a permanent injunction will not result in any hardship to Defendants since they agreed to the requested injunctive relief for the past year. [Filing No. 79 at 6.] It contends that "Defendants have not yet launched the offending contest and, pursuant to the requested injunction, would be free to launch any other contest that does not use the infringing marks." [Filing No. 79 at 6.] Because the offending contests have not yet launched, the NCAA argues, "any claimed loss of value would be pure speculation (and may even benefit Defendants)." [Filing No. 79 at 6-7.]

Defendants argue in response that the NCAA "will proceed in all respects with its own marks untouched in value, recognition, or viability if a permanent injunction is denied," but "Kizzang will be unable to proceed in any respects with any of its intended business plans if a

permanent injunction is granted against it." [Filing No. 84 at 22.] Defendants argue that their damage is much greater if the injunction is granted than the NCAA's damage would be absent an injunction. [Filing No. 84 at 22.]

In its reply, the NCAA reiterates its arguments and contends that Defendants' argument that the NCAA's marks will be untouched in value absent an injunction is "repugnant to trademark law and should be disregarded." [Filing No. 86 at 6-7.]

The Court finds that the balance of hardships here favors the NCAA. The Court is puzzled by Defendants' argument that absent an injunction, the NCAA "will proceed in all respects with its own marks untouched in value, recognition, or viability…." [Filing No. 84 at 22.] As discussed above, Defendants have admitted liability for trademark infringement and dilution and unfair competition. Irreparable harm is presumed to have occurred in this situation. The Court finds that, absent an injunction, the NCAA faces damage to its goodwill caused by Defendants' infringing marks. Conversely, if an injunction issues, Defendants will not be able to launch contests that are premised on marks the Court has already found are infringing. Defendants also have not demonstrated what harm, if any, they would suffer from an inability to launch the contests. The harm the NCAA would face absent an injunction outweighs any harm Defendants might face if an injunction issues.

### d. Public Interest

Finally, the NCAA argues that issuing an injunction would serve the public interest because it would prevent consumer confusion in the marketplace. [Filing No. 79 at 8.] In response, Defendants argue that the NCAA makes a "circular argument" by pointing to preventing consumer confusion as the basis for a finding of infringement. [Filing No. 84 at 23.] Defendants also argue that "Kizzang is a small vendor[,] NCAA is a gigantic vendor[,] [and i]t is not in the public interest

to permit large companies to control trademarks beyond the limits they are entitled to merely because they can afford to go after any small vendor they perceive as a potential threat." [Filing No. 84 at 23.] The NCAA reiterates its arguments on reply. [Filing No. 86 at 7.]

The Seventh Circuit Court of Appeals has found that the public interest is served by an injunction enjoining the use of infringing trademarks because "enforcement of the trademark laws prevents consumer confusion." *Eli Lilly & Co.*, 233 F.3d at 469 (citing *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 19 (7th Cir. 1992); *International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 n.8 (7th Cir. 1988)); *see also The American Automobile Association, Inc. v. Waller,* 2017 WL 6387315, *6 (S.D. Ind. 2017) (finding issuing permanent injunction was in the public interest because it would "protect[ ] [the public] from being misled into believing that [defendant's] business has been given a stamp of approval from the Plaintiff").

In sum, the Court finds that the NCAA has shown that it will suffer irreparable injury in the absence of an injunction, that it does not have an adequate remedy at law, that the balance of hardships weighs in favor of issuing an injunction, and that issuing an injunction would serve the public interest. Accordingly, the Court **GRANTS** the NCAA's Motion for Permanent Injunction, [Filing No. 78], and finds that the NCAA is entitled to a permanent injunction as follows:

Mr. Alexander[9] and Kizzang and its officers, agents, servants, employees, attorneys, and all others in active concert or participation with any of them are permanently enjoined from:

---

[9] Defendants assert in a footnote, without further discussion, that the NCAA has not alleged facts indicating that Mr. Alexander acted in his individual capacity, "other than that he directed and controlled the activities of Kizzang." [Filing No. 84 at 5.] The Court disagrees, and finds that the NCAA has raised several such allegations, including that Mr. Alexander "is the founder and owner of Kizzang, and directed and controlled the complained-of activities by Kizzang," "Mr. Alexander…understands well the value of being associated with and exploiting the NCAA's MARCH MADNESS and FINAL FOUR events," Mr. Alexander "touted the fame of that event and the FINAL FOUR tournament…," and numerous other allegations in which the NCAA referred to "Defendants" rather than just "Kizzang." [Filing No. 1.]

a. using the NCAA's FINAL FOUR or MARCH MADNESS marks and any colorable imitation or simulation of them, including FINAL 3, FINAL THREE, or APRIL MADNESS, including using them in connection with entertainment services such as online sweepstakes or contests;

b. doing any act or thing likely to induce the belief that Defendants' products or services are in any way legitimately connected with, or sponsored or approved by, the NCAA; and

c. doing any act or thing that is likely to dilute the distinctiveness of the NCAA's FINAL FOUR or MARCH MADNESS marks or that is likely to tarnish the goodwill associated with those marks, including the use of FINAL 3, FINAL THREE, or APRIL MADNESS.

### 3. *Exceptional Case Finding*

The NCAA seeks a finding by the Court that this is an "exceptional case," such that it is entitled to attorneys' fees under the Lanham Act. It argues that it has established that Defendants' violations of the Lanham act were willful, intentional, and deliberate. [Filing No. 77 at 21.]

Defendants argue that the NCAA has not shown that their acts were willful, intentional, or deliberate, but has only set forth allegations based on information and belief or that are legal conclusions. [Filing No. 83 at 13.] Defendants also point to the fact that they have not used the FINAL 3 and APRIL MADNESS marks since entering into the Stipulation. [Filing No. 83 at 13-14.]

In reply, the NCAA argues that Mr. Alexander knew how famous the MARCH MADNESS and FINAL FOUR marks were, and selected FINAL 3 and APRIL MADNESS due to the similarity and to exploit the NCAA's goodwill, which is evidence of willful, intentional, and deliberate conduct. [Filing No. 85 at 16-17.]

15 U.S.C. § 1117(a) provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." "Under the Lanham Act, an award of attorneys fees is committed to the trial court's sound discretion," and on appeal, the court of appeals "review[s] a

grant of attorney fees to a prevailing defendant under the Lanham Act only for clear error." *S Industries, Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001). The Seventh Circuit has instructed that "a case under the Lanham Act is 'exceptional,' in the sense of warranting an award of reasonable attorneys' fees to the winning party, if the losing party was…the defendant and had no defense yet persisted in the trademark in the trademark infringement…for which he was being sued, in order to impose costs on his opponent." *Nightingale Home Healthcare Inc. v. Anodyne Therapy, LLC*, 626 F.3d 958, 963-64 (7th Cir. 2010). An "exceptional case" is also one where defendants willfully violated the Lanham Act or disregarded legal proceedings. *MetroPCS v. Devor*, 215 F.Supp.3d 626, 638 (N.D. Ill. 2016).

The Court finds that this case falls within the category of "exceptional cases" that warrant the award of attorneys' fees under the Lanham Act. Defendants' marks are obviously similar to the NCAA's marks, and Defendants planned to use the marks in connection with contests and events related to NCAA basketball games. [*See* Filing No. 1 at 5-7.] This indicates willful infringement. Additionally, while Defendants readily agreed to the Stipulated Order in which they agreed not to use the FINAL 3 or APRIL MADNESS marks, the agreement lasted only through the end of 2017. In the meantime, Defendants ignored the litigation and missed their deadline to answer or otherwise plead. All the while, Defendants have not set forth any substantive defenses to the NCAA's claims. Indeed, their only argument related to the similarity of their marks to the NCAA's marks is that a Google search of their marks does not yield any results related to the NCAA. This argument is unavailing. The NCAA's Motion for Default Judgment, [Filing No. 76], is granted to the extent that the Court finds this is an "exceptional case" which entitles the NCAA to an award of its attorneys' fees.

*4.   Other Relief*

Finally, the NCAA requests an order requiring Defendants to "immediately recall from all distribution channels all products, services, advertising, and promotional materials bearing the NCAA Marks and any colorable imitations of them, including FINAL 3 and APRIL MADNESS," and to "file with this Court and serve on the NCAA a report in writing under oath within 30 days of the entry of Judgment setting forth in detail the manner and form in which Defendants have complied with the terms of any injunction entered by this Court, in accordance with 15 U.S.C. § 1116." [Filing No. 77 at 22-23.]

Defendants did not address these two components of relief in their response to the Motion for Default Judgment. [*See* Filing No. 83.] The Court must still ensure, however, that the scope of relief the NCAA seeks in connection with its Motion for Default Judgment does not exceed the scope of relief requested in the Complaint. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); *WMS Gaming Inc. v. WPC Productions Ltd.*, 542 F.3d 601, 606 (7th Cir. 2008). Here, the NCAA requested both components of relief in its Complaint. [Filing No. 1 at 12.] The Court finds the relief requested appropriate, and **GRANTS** the NCAA's Motion for Default Judgment to the extent that it includes those components in its order. [*See* 15 U.S.C. § 1116(a) (an injunction to prevent trademark violations "may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of such injunction, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction").]

# IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the NCAA's Motion for Default Judgment,

[76], and Motion for Permanent Injunction, [78], to the extent it **ORDERS** as follows:

- The Court finds that Defendants have violated the Lanham Act, 15 U.S.C. §§ 1114 and 1125, and engaged in unfair competition, and that this is an "exceptional case" under 15 U.S.C. § 1117 entitling the NCAA to reasonable attorneys' fees;

- Mr. Alexander and Kizzang and their officers, agents, servants, employees, attorneys, and all others in active concert or participation with any of them are **PERMANENTLY ENJOINED** from:

    o using the NCAA's FINAL FOUR or MARCH MADNESS marks and any colorable imitation or simulation of them, including FINAL 3, FINAL THREE, or APRIL MADNESS, including using them in connection with entertainment services such as online sweepstakes or contests;

    o doing any act or thing likely to induce the belief that Defendants' products or services are in any way legitimately connected with, or sponsored or approved by, the NCAA; and

    o doing any act or thing that is likely to dilute the distinctiveness of the NCAA's FINAL FOUR or MARCH MADNESS marks or that is likely to tarnish the goodwill associated with those marks, including the use of FINAL 3, FINAL THREE, or APRIL MADNESS;

- Mr. Alexander and Kizzang and their respective officers, agents servants, employees, attorneys, and all others in active concert or participation with any of them must:

    o immediately recall from all distribution channels all products, services, advertising, and promotional materials bearing the NCAA Marks and any colorable imitations of them, including FINAL 3 and APRIL MADNESS; and

    o file with the Court and serve on the NCAA a report in writing under oath within 30 days of the entry of Judgment setting forth in detail the manner and form in which Defendants have complied with the terms of any injunction entered by this Court, in accordance with 15 U.S.C. § 1116; and

- The NCAA shall file any Motion for Attorneys' Fees by **February 23, 2018**. Defendants' response shall be due by **March 9, 2018**, and the NCAA's reply shall be due by **March 16, 2018**. If the NCAA files its Motion for Attorneys' Fees before

the February 23, 2018 deadline, the parties must comply with the briefing deadlines set forth in Local Rule 7-1. Final judgment shall issue after the attorneys' fee issue is resolved.

The Court requests that the Magistrate Judge meet with the parties to determine if an agreed resolution to the fee issue can be accomplished.

Date: 1/18/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**